NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TOUFIK SERBOUTI,<br><br>          Plaintiff,<br><br>v.<br><br>COMMISIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Civil Action No.: 11-4217 (JLL)<br><br><br>OPINION |

**LINARES**, District Judge.

Toufik Serbouti ("Claimant") filed an appeal with this Court seeking review of Administrative Law Judge Donna Krappa's (the "ALJ") decision to deny him Social Security disability benefits. This Court may consider the submissions both in support of and in opposition to this appeal and decide this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. Based on the evidence in the record and the standard of review for such cases (dictating that the ALJ's findings must be upheld provided they are "reasonable" and supported by "substantial evidence") the Court should find the ALJ's determination that the Claimant is not disabled was proper.

## I.      BACKGROUND

Claimant Toufik Serbouti suffers from a severe impairment of the cervical and lumbar spine and has not worked since May 1, 2007, the date of the alleged onset of his disability. (R. 18). In April 2008, Claimant underwent a cervical fusion. (Id. at 20). Since the surgery, Claimant alleges he is "always in pain," it takes him "forever to shower and dress," he can only walk one block before he has "problems," he can only stand or sit for an hour before he tires, lifting even one pound causes him "problems," he drops objects he attempts to lift, and his wife prepares his meals and does all the housework. (Id. at 19).

The ALJ reviewed Claimant's records reflecting the periods both prior and subsequent to Claimant's surgery. The ALJ found Claimant did not have an "impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. 18). She explained: "no medical source has reported clinical signs and laboratory findings of listing level severity. In this regard, Listing 1.04, pertaining to disorders of the spine, [was] not met because there [was] no evidence of persistent motor, sensory or reflex loss, of sitting and supine straight leg raising or of an inability to ambulate effectively." (Id.) The ALJ considered Claimant's residual functional capacity ("RFC"), calculated by a consulting physician, in making her decision. The RFC stipulated Claimant could perform "light work." (Id.) The ALJ elaborated that Claimant could to "lift and/or carry 10 lbs. frequently and 20 lbs.

occasionally; perform unlimited pushing and pulling within the weight restriction noted above; frequently balance; sit for a total of 6 hours; and stand or walk a total of 6 hours." (Id.) The ALJ further stated that the Claimant was able to "maintain adequate concentration and focus to perform simple, unskilled work" and could perform jobs that require:

> no climbing of ladders, ropes or scaffolds; that require only occasional climbing of stairs and ramps; that require only occasional stooping, kneeling, crouching and no crawling; that do not involve exposure to extreme cold; that require no quick movements of the neck and no movement of the neck side to side at greater than a 45 degree angle; and that are simple, unskilled and repetitive.

(Id.)

In her February 16, 2010 decision, the ALJ determined Claimant was not disabled within the meaning of the SSA. (Id. at 16). While the ALJ noted Claimant cannot return to his past work, (Id. at 23), she looked to the record, Claimant's RFC, and Claimant's vocational factors (including the testimony of a vocational expert) and determined Claimant was employable as a tabber, decal applier, assembler, inspector, and microfilm processor. (Id. at 24). These jobs exist in significant numbers in both the regional and national economies. (Id.)

In her decision, the ALJ reported that Claimant's post-surgery MRI showed evidence of spondylosis of the cervical spine and a slight disk herniation. (Id. at 19). She elaborated: "physical examinations have been limited to a slightly broad based gait, mild tenderness and limitation of motion in the lumbar spine, mildly decreased motor strength in the proximal upper and lower extremities, moderately diminished motor strength in the hands, and markedly brisk reflexes." (Id. at 20). She also considered Claimant's June 2007 EMG and nerve conduction studies, which were normal, (Id. at 19), and a "monopolar needle examination of selected muscle of the left arm," which was normal despite "possible" evidence of "multi-level left cervical radiculopathy without electrodiagnostic evidence of limb involvement." (Id. at 20). The Claimant's July 2008 carotid artery studies and August 2008 EMG and nerve conduction studies were also normal "with no evidence of peripheral polyneuropathy or left lumbosacral radiculopathy. Lower venous studies from July 2008 showed no evidence of deep vein thrombosis, bilaterally." (Id.) The ALJ also cited physical evaluations by numerous physicians revealing Claimant possesses full or nearly full grip strength. (Id. at 20-22). The ALJ also considered Claimant's August 22, 2007 and February 2, 2008 SSA Function Reports which indicate that he prepares "light meals" and helps with the laundry (Id. at 23).

The ALJ addressed Claimant's allegations of pain as follows: "Although assertions of pain and symptoms are reasonable to a degree, the overall record does not support them to the debilitating extent asserted . . . . [T]he evidence does not support such extensive limitations" as the Claimant asserts. (Id. at 22). She concludes, "I find the [C]laimant's complaints of severe pain are not entitled to significant weight, as they are in sharp contrast with the documentary evidence." (Id. at 23).

The ALJ considered reports from Claimant's evaluating physicians in her decision. She referred to the findings of Dr. Mills who examined Claimant on March 12, 2008 at

the request of the SSA. The examination revealed some limitations in the Claimant's range of motion and slight clonus in the ankles but showed that Claimant could "squat, walk on heels, and walk on toes." (Id. at 20). Additionally the Claimant displayed "no sensory loss" and his "motor strength was 5/5 throughout. He was able to fully extend his hands. He could make fist. He could oppose all digits and his grip and pinch strength was 5/5." (Id.) Finally, Dr. Mills noted Claimant was able to "transfer papers appropriately and . . . walk at a reasonable pace."

The ALJ also cited the opinion of Dr. Kane, another evaluating physician. Dr. Kane examined the Claimant on June 15, 2009 and noted "only . . . minimal clinical evidence of mild loss of forward flexion." (Id. at 21). The doctor noted the following physical findings:

> hyperextension was appreciable to 30 degrees, bilateral rotation of the neck was only mildly decreased, and there was some tightness in the trapezius muscles, bilaterally. There was full range of motion with testing of the upper extremities. On strength testing, thumb opposition and grip strength was 4+/5; however, biceps, triceps, shoulder internal and external rotation, as well as wrist dorsiflexion and volar flexion were all 5/5, bilaterally. Upper extremity reflexes were 2+. On sensory testing, he was "fairly" sharp to pinprick throughout the upper extremities. Upon examination of the lumbar spine he was unable to toe walk but he had no major pain on direct palpation within the back. Forward flexibility and hyperextension were good; lateral bending was normal; straight leg raising was negative and hip mobility was normal and pain free. Range of motion of the knee and ankle was normal. On sensory testing, everything from the toes up to the thighs was "sharp" to pinprick. Motor testing of the lower extremities showed less toe dorsiflexion strength on the left side by 4/5; however, plantar flexion strength, right toe dorsiflexion, and quadriceps and hamstring strength was 5/5, bilaterally. Lower extremity reflex testing showed knee jerks were 2+; ankle jerk on the right was 3 and about 5 clonus on left.

(Id.) At Claimant's final visit to Dr. Kane, the physician noted "mild loss of mobility of the neck in all directions; 'some' trapezius tightness, bilaterally; and mild decrease of thumb opposition and grip strength to the hands." (Id.) Despite some weakness, Dr. Kane declared his findings "normal" and stated the latest MRI showed good results with only a minor lumbar bulge. Dr. Kane did not see "any anatomic explanation for the [C]laimant's lumbar radicular complaints." (Id.)

The ALJ also noted Claimant's physical examinations did not reveal any significant problems ambulating. (Id. at 23). Dr. Mills' examination revealed only a "slight decrease of lumbar spine flexion by 15 degrees, bilaterally and positive supine straight leg raising; [which] was 70 degrees, bilaterally but in the seated position, it was 90 degrees." (Id.) Dr. Mills also noted that Claimant could "squat, walk on heels and walk on toes," displayed "no sensory loss," had "increased" reflexes with a "few beats of

clonus at the ankles, bilaterally" and "motor strength" at "5/5 throughout." (Id. at 20, 23).[1]

The ALJ also reviewed medical records from Claimant's treating physician, Dr. Arginteanu. On May 7, 2008, Dr. Arginteanu remarked that Claimant complained of a "fair bit of local pain as well as radicular symptomatology." (Id. at 313). On June 30, 2008, Dr. Arginteanu noted that Claimant's physical examination "did not reveal any significant abnormalities" apart from "diminished sensory function on the left side and brisk reflexes" and he noted "no gross focal motor deficits." (Id. at 20). Dr. Arginteanu noted Claimant's September 2008 post-surgery MRI results were "consistent with status post anterior cervical spinal fusion at the C4-C7 levels; congenital 'block vertebra' at the C3-C4 levels; bulging annulus and mild degenerative changes at C2-C3, with no evidence of spinal stenosis or herniated disc." (Id. at 20). As for Claimant's complaints of lumbar back pain, Dr. Arginteanu stated that Claimant did not need surgery. (Id. at 315). Despite Claimant's normal test results, in a letter dated January 2, 2009, Dr. Arginteanu opined: "Due to [Claimant's] continued agonizing miserable pain despite significant surgery with decompression, fusion, and instrumentation of the cervical spin, I do believe at this time the patient is totally and completely disabled and unable to work." (Id.)

The ALJ did not rely on Dr. Arginteanu's conclusory opinion in her report. She explained:

> Dr. Arginteanu simply recounts the [C]laimant's claims of pain and concludes that the [C]laimant is totally disabled because of it. However, the records that the doctor has submitted show only complaints of pain after the procedure he performed and fail to chronicle any other complaints of extreme pain . . . I find that that [sic] Dr. Arginteanu's assessment of disability is unsupported by his own objective findings or record as a whole. Therefore, no significant weight was given to the assessment of Dr. Arginteanu (Exhibit 13F, 16F). Under the Regulations I am not bound to accept a treating source's conclusion as to disability—particularly if this conclusion is not supported by clinical and laboratory evidence (20 CFP 404.1527(d), 416.927(d) and SSR 96-2p).

(Id. at 23).

---

[1] Furthermore, May 22 and June 4, 2007 examinations by Dr. Feldman revealed the Claimant's lower extremities were "normal to inspection and palpation," did not exhibit "instability," demonstrated a "full [range of motion]," and had "intact motor strength" and "normal muscle tone." (Id. at 235, 244, 336, 345). Similarly, a September 6, 2007 visit to Active Orthopedics & Sports Medicine, P.A. revealed a "smooth, narrow-based, reciprocal, nonantalgic" gait. (Id. at 292). On March 31, 2008, Dr. Arginteanu noted Claimant was "able to ambulate around the examining room." (Id. at 368). On the other hand, on a Multiple Impairment Questionnaire dated April 5, 2010, Dr. Arginteanu stated Claimant had a "good" prognosis, (Id. at 404), despite alleging that Claimant could only "stand/walk" for 0-1 hours out of an eight-hour day. (Id. at 406).

Claimant filed a request for disability benefits with the Social Security Administration ("SSA") on July 11, 2007. He alleges his disability began May 1, 2007. The SSA denied Claimant's request for benefits on October 11, 2007 and again on March 27, 2008. Claimant requested a hearing with an ALJ on May 21, 2008. The hearing took place on August 3, 2009. A supplemental hearing featuring a vocational expert took place on January 11, 2010. The ALJ denied Claimant's request for benefits on February 16, 2010. Claimant now alleges the ALJ failed to follow the treating physician rule and failed to properly evaluate Claimant's credibility in making her determination as to Claimant's disability. The case is before us on appeal.

## II.   LEGAL STANDARD:

### 1.   Determining Disability

In order to receive disability benefits under the Social Security Act, a claimant must show he is disabled based on his inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is disabled for these purposes only if his physical or mental impairments are of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 1382c(a)(3)(B). The Social Security Regulation employs a five-step evaluation to adjudicate disability claims. 20 C.F.R. §404.1520(a)(4).

The five steps are analyzed in order. If it is determined the claimant is or is not disabled at any step, a decision is made and the evaluation will cease. If a determination cannot be made that the claimant is or is not disabled at a particular step the evaluation will continue. At step one, the Commissioner determines whether the claimant is engaging in substantial gainful activity. If he is not, the Commissioner continues to step two and determines whether the claimant has a severe impairment. If the claimant has a severe impairment, the Commissioner proceeds to step three to determine whether the claimant's impairment meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner proceeds to step four and considers the claimant's RFC along with his relevant past work to determine whether the claimant can return to his past work. If the claimant cannot perform his past work based on his RFC, the Commissioner proceeds to step five where the burden shifts to the Commissioner to show that, based on the claimant's RFC and vocational factors, the claimant can perform other work existing in significant numbers in the national economy. If the Commissioner cannot show that claimant can perform other work in existence, the claimant is deemed disabled and is entitled to disability benefits.

The SSA will generally give more weight to the medical opinions of treating sources (those who have examined a claimant over a period of time) than the opinions of those who have not examined the claimant. 20 C.F.R. § 404.1527(d)(2). The Court may, however, reject a treating physician's opinion when it contradicts medical evidence in the

record. 20 C.F.R. § 404.1527(d)(2); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 202 (3d Cir. 2008). When an ALJ does not afford a treating source's opinion controlling weight he should provide an explanation for his decision. 20 C.F.R. § 404.1527(d)(2).

The SSA may also determine whether a claimant's statements about the "intensity, persistence, and limiting effects of [his] symptoms" are credible. 20 C.F.R. § 404.1529(c)(4). The SSA will look at whether "symptoms, including pain . . . can reasonably be accepted as consistent with the objective medical evidence and other evidence." Id.; see also Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (in determining a claimant's credibility, the ALJ may "determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it" based upon whether the "objective medical evidence" is indicative of the type of "pain and other subjective symptoms" the claimant alleges.) In making a determination regarding a claimant's credibility, the SSA will consider (i) the claimant's daily activities; (ii) the "location, duration, frequency, and intensity of [claimant's] pain or other symptoms"; and (vii) "other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms," among other factors. 20 C.F.R. § 404.1529(c)(3). The Court must uphold the Commissioner's decision to disregard a claimant's alleged pain if the Commissioner's findings are supported by substantial evidence. See Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002).

## 2.   Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the ALJ's decision if it is supported by substantial evidence. Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); see also 42 U.S.C. § 405(g). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Thus, when the ALJ "is faced with conflicting evidence he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir.1986)). The reviewing court must consider the totality of the evidence to determine whether there is substantial evidence to support the Commissioner's decision. See generally Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981). Furthermore, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Rather, the court must give deference to the administrative decision. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (review is limited to determining whether decision as a whole is arbitrary, capricious, or contrary to law).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider the: "(1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by plaintiff and corroborated by others who have observed him; and (4) plaintiff's age, educational background and work history." Curtain v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). When a medical opinion is consistent with other substantial evidence, it is given controlling weight. 20 C.F.R. §§

416.927(c)(1), (d)(2) (2007). However, if a medical opinion is either inconsistent with other evidence in the case or is internally inconsistent, the Commissioner will "weigh all of the evidence" to decide whether the claimant is disabled. Id. at § 416.927(c)(2).

### III.   ANALYSIS

The Court begins by reviewing the ALJ's application of the five-step process. At step one, the ALJ found that the Claimant has not engaged in substantial gainful activity since the date of the alleged onset of his disability, May 1, 2007. (R. 18). At step two the ALJ concluded that Claimant has a severe impairment in the form of a back disorder of the cervical and lumbar spine. (Id.) At step three, the ALJ found that the Claimant did not have an "impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (Id.) She explained "no medical source has reported clinical signs and laboratory findings of listing level severity. In this regard, Listing 1.04, pertaining to disorders of the spine, [was] not met because there [was] no evidence of persistent motor, sensory or reflex loss, of sitting and supine straight leg raising or of an inability to ambulate effectively." (Id.) At step four, the ALJ found Claimant had the RFC to perform light work since he could "lift and/or carry 10 lbs. frequently and 20 lbs. occasionally; perform unlimited pushing and pulling within the weight restriction noted above; frequently balance; sit for a total of 6 hours; and stand or walk a total of 6 hours." (Id.) The ALJ further stipulated that the Claimant was able to "maintain adequate concentration and focus to perform simple, unskilled work" and could perform jobs that require:

> no climbing of ladders, ropes or scaffolds; that require only occasional climbing of stairs and ramps; that require only occasional stooping, kneeling, crouching and no crawling; that do not involve exposure to extreme cold; that require no quick movements of the neck and no movement of the neck side to side at greater than a 45 degree angle; and that are simple, unskilled and repetitive.

(Id.) The ALJ considered Claimant's RFC and medical history and determined Claimant could not return to his past work. (Id. at 23). Finally, the ALJ determined that based upon his RFC and vocational factors, Claimant is capable of performing other work existing in significant numbers in the national economy. (Id. at 24). The ALJ relied on the testimony of a vocational expert who indicated Claimant was employable as tabber, decal applier, assembler, inspector, and microfilm processor. (Id. at 24). These jobs exist in significant numbers in both the regional and national economies. (Id.)

The ALJ's analysis of the five steps was proper. She looked at each step in turn and explained the rationale behind the subjective aspects of her determination. 20 C.F.R. § 404.1527(d)(2). Despite the fact that the ALJ properly evaluated the totality of the medical evidence, see generally Taybron, 667 F.2d at 413, Claimant asserts the ALJ was incorrect in her decision not to apply the treating physician rule in considering Claimant's disability application.

To begin, Claimant asserts it is not the role of the ALJ to interpret medical

evidence. The Claimant refers to Morales v. Apfel, stating: "The ALJ cannot reject the medical findings from a treating specialist 'due to his or her own credibility judgments, speculation or lay opinion." Brief for Plaintiff at 19, Serbouti v. Astrue, No. 11-4217 (3d Cir. Dec. 13, 2011), ECF No. 8 (citing Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000)). This is a mischaracterization of both Morales and the standard established in 20 C.F.R. § 404.1527(d)(2). The context from which the Morales quotation is drawn is as follows: "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." Morales, 225 F.3d at 317-18 (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)). Both Morales and 20 C.F.R. § 404.1527(d)(2) allow an ALJ to reject a treating physician's opinion so long as the ALJ bases his decision on contradictory medical evidence in the record and not "speculative inferences" or "his or her own credibility judgments, speculation or lay opinion." Id. The ALJ in this case did not err in interpreting the medical evidence in the record (see *infra* p. 10-11).

Next, the ALJ was correct to disregard the treating physician rule. Claimant's treating physician, Dr. Arginteanu, provided only conclusory statements regarding the Claimant's condition and his determination of disability contradicts the medical evidence in the record. In a letter dated January 2, 2009, nearly a year after Claimant's April 2008 cervical fusion, (R. 20), Dr. Arginteanu concluded: "Due to [Claimant's] continued agonizing miserable pain despite significant surgery with decompression, fusion, and instrumentation of the cervical spin, I do believe at this time the patient is totally and completely disabled and unable to work." (Id. at 315). The record does not corroborate this statement. For example, Dr. Arginteanu noted that Claimant's September 2008 post-surgery MRI results were "consistent with status post anterior cervical spinal fusion at the C4-C7 levels; congenital 'block vertebra' at the C3-C4 levels; bulging annulus and mild degenerative changes at C2-C3, with no evidence of spinal stenosis or herniated disc." (Id. at 20). While Dr. Arginteanu noted that Claimant complained of a "fair bit of local pain as well as radicular symptomatology," (Id. at 313), there is no empirical evidence supporting this allegation. Furthermore, the presence a "fair bit" of pain does not support Dr. Arginteanu's assertion that Claimant is "totally and completely disabled." Finally, on June 30, 2008, Dr. Arginteanu noted that Claimant's physical examination "did not reveal any significant abnormalities." (Id. at 20). Apart from "diminished sensory function on the left side and brisk reflexes," he noted "no gross focal motor deficits." (Id.)

On the other hand, the ALJ reported that while Claimant's post-surgery MRI showed evidence of spondylosis of the cervical spine and a slight disk herniation, (Id. at 19), "physical examinations have been limited to a slightly broad based gait, mild tenderness and limitation of motion in the lumbar spine, mildly decreased motor strength in the proximal upper and lower extremities, moderately diminished motor strength in the hands, and markedly brisk reflexes." (Id. at 20). The ALJ also looked at other studies the Claimant underwent. For example, Claimant's June 2007 EMG and nerve conduction studies were normal, (Id. at 19), and a "monopolar needle examination of selected muscle of the left arm" was normal despite "possible" evidence of "multi-level left cervical radiculopathy without electrodiagnostic evidence of limb involvement." (Id. at 20). The Claimant's July 2008 carotid artery studies and August 2008 EMG and nerve conduction

studies were also normal "with no evidence of peripheral polyneuropathy or left lumbosacral radiculopathy. Lower venous studies performed in July 2008 showed no evidence of deep vein thrombosis, bilaterally." (Id.)

The ALJ also cited reports by several of Claimant's evaluating physicians. Dr. Mills examined Claimant on March 12, 2008 at the request of the SSA. The examination revealed that despite some limitations in Claimant's range of motion and slight clonus in the ankles, Claimant was nonetheless able "to squat, walk on heels, and walk on toes." (Id. at 20). Additionally, Claimant displayed "no sensory loss" and his "motor strength was 5/5 throughout. He was able to fully extend his hands. He could make fist. He could oppose all digits and his grip and pinch strength was 5/5." (Id.) Finally, Dr. Mills noted that the Claimant was able to "transfer papers appropriately and . . . walk at a reasonable pace."

The ALJ also cited Dr. Kane's June 15, 2009 examination of Claimant. The ALJ noted Dr. Kane's examination revealed "only . . . minimal clinical evidence of mild loss of forward flexion." (Id. at 21). He cited the following physical findings:

> hyperextension was appreciable to 30 degrees, bilateral rotation of the neck was only mildly decreased, and there was some tightness in the trapezius muscles, bilaterally. There was full range of motion with testing of the upper extremities. On strength testing, thumb opposition and grip strength was 4+/5; however, biceps, triceps, shoulder internal and external rotation, as well as wrist dorsiflexion and volar flexion were all 5/5, bilaterally. Upper extremity reflexes were 2+. On sensory testing, he was "fairly" sharp to pinprick throughout the upper extremities. Upon examination of the lumbar spine he was unable to toe walk but he had no major pain on direct palpation within the back. Forward flexibility and hyperextension were good; lateral bending was normal; straight leg raising was negative and hip mobility was normal and pain free. Range of motion of the knee and ankle was normal. On sensory testing, everything from the toes up to the thighs was "sharp" to pinprick. Motor testing of the lower extremities showed less toe dorsiflexion strength on the left side by 4/5; however, plantar flexion strength, right toe dorsiflexion, and quadriceps and hamstring strength was 5/5, bilaterally. Lower extremity reflex testing showed knee jerks were 2+; ankle jerk on the right was 3 and about 5 clonus on left.

(Id. at 21). At Claimant's final visit to Dr. Kane, the physician noted "mild loss of mobility of the neck in all directions; 'some' trapezius tightness, bilaterally; and mild decrease of thumb opposition and grip strength to the hands." (Id.) Despite some weakness, Dr. Kane reported "normal" findings and stated the latest MRI showed good results with only a minor lumbar bulge. The doctor did not see "any anatomic explanation for the [C]laimant's lumbar radicular complaints." (Id.)

As for Claimant's allegations of lumbar back pain, Dr. Arginteanu has stated that Claimant does not need surgery at this time, (R. 315), while Dr. Kane noted in July of 2009 that Claimant's MRI showed only a "minor" disc bulge in the lumbar spine and stated that "he did not see any anatomic explanation for the [C]laimant's lumbar radicular

complaints." (Id. at 21). The ALJ correctly minimized the relevance of Claimant's lumbar pain in fashioning his opinion. (Id. at 22).

Based on the evidence in the record, the ALJ was correct to disregard Dr. Arginteanu's unsubstantiated conclusion that Claimant is disabled. 20 C.F.R. § 404.1527(d)(2); Johnson, 529 F.3d at 202. The ALJ discussed her decision not to rely upon Dr. Arginteanu's analysis in her report. 20 C.F.R. § 404.1527(d)(2); Ogden, 677 F. Supp. at 278. She explained:

> Dr. Arginteanu simply recounts the [C]laimant's claims of pain and concludes that the [C]laimant is totally disabled because of it. However, the records that the doctor has submitted show only complaints of pain after the procedure he performed and fail to chronicle any other complaints of extreme pain . . . I find that that [sic] Dr. Arginteanu's assessment of disability is unsupported by his own objective findings or record as a whole. Therefore, no significant weight was given to the assessment of Dr. Arginteanu (Exhibit 13F, 16F). Under the Regulations I am not bound to accept a treating source's conclusion as to disability— particularly if this conclusion is not supported by clinical and laboratory evidence (20 CFP 404.1527(d), 416.927(d) and SSR 96-2p).

(Id. at 23). The ALJ clearly explained her decision to disregard Dr. Arginteanu's opinion and correctly cited the law in support of her decision. 20 C.F.R. § 404.1527(d)(2); Ogden, 677 F. Supp. at 278.

Since Dr. Arginteanu's opinion was not consistent with the evidence in the record, the ALJ was entitled to "weigh all of the evidence" in determining whether or not Claimant was disabled. 20 C.F.R. §§ 416.927(c)(2). The record provides more than a "mere scintilla" of evidence in support of the ALJ's analysis of the five steps and her conclusion is such that a "reasonable mind might accept [it] as adequate." Richardson, 402 U.S. at 401. In making her decision, the ALJ looked at "(1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by plaintiff and corroborated by others who have observed him; and (4) plaintiff's age, educational background and work history." Curtain, 508 F. Supp. at 793. The Court should honor the ALJ's evaluation of Claimant's condition over the conclusory statements of Claimant's treating physician, as the ALJ's conclusion is based on the substantial medical evidence in the record, Doak, 790 F.2d at 28, and is such that a "reasonable mind might accept [it] as adequate." Richardson, 402 U.S. at 401.

Finally, Claimant challenges the ALJ's reliance on the RFC, determined by a consulting physician, over his treating physician's opinion. While the opinions of treating physicians are generally afforded more weight than those of non-examining physicians, the ALJ did not rely solely on the consulting physician's RFC analysis in her decision. Instead she considered the consulting physician's RFC along with the opinions of Claimant's examining physicians and the evidence in the medical record to determine the RFC was appropriate. In light of the evidence in the record and the fact that the treating physician's conclusions were not substantiated, the ALJ was correct to consider

Claimant's RFC in determining his disability status. 20 C.F.R. § 404.1527(d)(2); Johnson, 529 F.3d at 202.

In spite of the normal test results detailed above, Claimant continues to allege pain. (R. 19). The ALJ concluded the Claimant's self-reported limitations regarding the "intensity, persistence, and limiting effects of [his] symptoms," 20 C.F.R. § 404.1529(c)(4), were inconsistent with the evidence in the record. (R. 23). The Claimant asserts he is "always in pain," it takes him "forever to shower and dress," he can only walk one block before he has "problems," he can only stand or sit for one hour before he tires, lifting even one pound causes him "problems," he drops objects he attempts to lift, and his wife prepares his meals and does all the housework. (Id. 19). These claims are belied by the Claimant's assertions elsewhere. For example, on August 22, 2007 and February 2, 2008, Claimant filled out SSA Function Reports indicating he prepares light meals and that he helps with the laundry. (Id. at 23).

The Claimant cites Frankenfield v. Bowen as evidence that his ability to partake in daily activities, such as preparing light meals and helping with the laundry, is not relevant to determining whether or not he is disabled. Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988). This case does not provide an appropriate comparison, however, since the ALJ in Frankenfield disregarded medical opinions that were corroborated by the evidence in the record in making his determination of disability. In the instant case, however, the ALJ did not disregard corroborated medical opinions in making her determination. Furthermore, the ALJ in the instant case discussed Claimant's daily tasks not to definitively determine Claimant's disability but because they speak to the issue of credibility in that Claimant's pain is not as incapacitating as he has at times alleged.

Claimant's credibility as to the "intensity, persistence, and limiting effects of" his pain is further undermined because his physical examinations do not reveal any significant problems ambulating, (R. 23), despite the extreme limitations he claims.[2] Finally, Claimant's allegations that he cannot lift weight and that he frequently drops

---

[2] On the contrary, Dr. Mills' examination revealed only a "slight decrease of lumbar spine flexion by 15 degrees, bilaterally and positive supine straight leg raising; [which] was 70 degrees, bilaterally but in the seated position, it was 90 degrees." (R. 23) Dr. Mills noted Claimant could "squat, walk on heels and walk on toes," displayed "no sensory loss," had "increased" reflexes with a "few beats of clonus at the ankles, bilaterally" and "motor strength" at "5/5 throughout." (Id. at 20, 23). Furthermore, May 22 and June 4, 2007 examinations by Dr. Feldman show the Claimant's lower extremities were "normal to inspection and palpation," did not demonstrate "instability," had a "full [range of motion]," and had "intact motor strength" and "normal muscle tone." (Id. at 235, 244, 336, 345). Similarly Claimant's medical records from a September 6, 2007 visit to Active Orthopedics & Sports Medicine, P.A. revealed a "smooth, narrow-based, reciprocal, nonantalgic" gait. (Id. at 292). On March 31, 2008 Dr. Arginteanu noted that Claimant was "able to ambulate around the examining room." (Id. at 368). The only evidence in the record supporting Claimant's allegation of problems ambulating is a Multiple Impairment Questionnaire dated April 5, 2010 in which Dr. Arginteanu alleged Claimant can only "stand/walk" for 0-1 hours out of an eight-hour day. (Id. at 406). This claim is contradicted by Dr. Arginteanu's comment earlier on the same questionnaire that the patient had a "good" prognosis. (Id. at 404).

items he picks up are refuted by numerous physical evaluations that have shown full or nearly full grip strength. (Id. at 20-22).

Based on the evidence in the record, the ALJ addressed Claimant's allegations of pain with the following: "although assertions of pain and symptoms are reasonable to a degree, the overall record does not support them to the debilitating extent asserted." (Id. at 22). She concluded, "I find the [C]laimant's complaints of severe pain are not entitled to significant weight, as they are in sharp contrast with the documentary evidence." (Id. at 23). This conclusion is consistent with 20 C.F.R. § 404.1529(c)(4) and the Hartranft standard which establishes that an ALJ may compare a claimant's allegations of pain to the objective medical evidence in the record. 20 C.F.R. § 404.1529(c)(4); Hartranft, 181 F.3d at 362. Furthermore, the ALJ provided an explanation for her determination that the Claimant's allegations of pain were not credible, as required by Ogden. Ogden, 677 F. Supp. at 278.

The ALJ properly evaluated the evidence in the record regarding the "intensity, persistence, and limiting effects of [Claimant's] symptoms." 20 C.F.R. § 404.1529(c)(4). She considered Claimant's daily activities, Claimant's subjective allegations of pain or other symptoms," and "other factors concerning [Claimant's] functional limitations and restrictions due to pain or other symptoms" in making her determination. 20 C.F.R. § 404.1529(c)(3). She concluded Claimant's allegations regarding the debilitating extent of his pain are not entirely reasonable. The ALJ's decision to look to the record for objective evidence of pain was therefore correct. Hartranft, 181 F.3d at 362. Pursuant to Burns, this Court must uphold the ALJ's decision regarding Claimant's alleged pain as it is supported by substantial evidence. Burns, 312 F.3d at 129.

Finally, Claimant alleges the ALJ acted in defiance of 20 C.F.R. § 404.1529(c)(4) by performing her credibility analysis on the RFC and not the record as a whole. While one could read the ALJ's finding as though it decided the Claimant's credibility based upon the RFC, the ALJ's larger analysis makes it clear that she relied on the evidence throughout the record in making her determination. For example, in analyzing Claimant's credibility she cited Claimant's self-reported limitations and allegations of pain along with his own testimony elsewhere and the various medical opinions in the record, in accordance with 20 C.F.R. § 404.1529(c)(4).

**IV.     CONCLUSION**

For the reasons set forth above, the ALJ's determination that Claimant was not disabled within the meaning of the SSA is supported by substantial evidence and the decision of the ALJ is affirmed.  An appropriate Order accompanies this Opinion.

DATED: August 6, 2012

s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE
